No. 2.—MICHAEL ROBERTS, propounder, &c. plaintiff in error, *vs.* ELI H. WALKER, caveator, &c. defendant in error.

[1.] When the ward has come to years of discretion, the residence of the guardian is not the residence of the ward, unless the ward choose to make it his residence.

Caveat to will, in Jasper Superior Court. Tried before Judge HARDEMAN, April Term, 1855.

The only question in this case was, the right of the Court of Ordinary of Jasper County to jurisdiction of the probate of the will of James M. Johnston, upon this state of facts: James M. Johnston was a minor, about 20 years of age; his father resided in Butts County at the time of his death; his mother, after she became a widow, lived and died in Jasper Co. In 1839, one Littlejohn, of Monroe County, was appointed guardian of James M. Johnston by the Court of Ordinary of Jasper County. In 1847, he removed his guardianship to Monroe County and there died. In 1849, E. G. Cabiness was appointed guardian by the Ordinary of Monroe County. The ward resided with Littlejohn & Cabiness, in Monroe County. He went, by consent of Cabiness, to Jasper County, to visit his relatives, promising to return. He afterwards sent for his trunk and refused to return, though requested

and commanded by Cabiness. He remained there several months, and made this will while there, and there died. In the meanwhile, Cabiness was elected and qualified the Ordi- nary of Monroe County, and his letters of guardianship there- by abated.

The Court below charged the Jury—1. That although the letters of guardianship to Cabiness abated on his election, yet, he continued to have control of the person and [property of Johnston until the appointment of another guardian.

2. That James M. Johnston, after the abatement of said letters, could not acquire a residence out of Monroe County,. without the consent and acquiescence of said Cabiness.

3. That although said Johnston may have intended to have made Jasper County his residence, and actually lived there at the time of his death, he could not make it his residence without the consent and acquiescence of his guardian.

Error is assigned upon each one of these charges.

LOFTON; A. REESE, for plaintiff in error.

O. C. GIBSON, for defendant in error..

*By the Court.*—BENNING, J. delivering the opinion.

[1.] In *The King against Greenhill*, (4 *Adolph. & Ell.* 624,) Lord *Denman*, C. J. says: "When an infant is brought before the Court by *habeas corpus*, if he be of an age to ex- ercise a choice, the Court leaves him to elect where he will go. If he be not of that age, and a want of direction would only expose him to dangers or seductions, the Court must make an order for his being placed in the proper custody," "and that, undoubtedly, is the custody of the father." In these positions the Chief Justice is supported by a number of cases. Among these are *Rex vs. Smith*, (2 *Strange*, 982.) *Rex vs. Clarkson*, (1 *do.* 444.) *Rex vs. Johnson*, (1 *do.* 579.) *Rex vs. Delavel*, (2 *Burr.* 1434.) *Lady Henrietta Berkley's*

*Case,* (3 *Harg. St. Tr.* 544,) (*stated in Forsyth's Custody of Infants,* 99 *Law Lib.*)

In this case the infant was twenty years old, and engaged to be married. He was therefore "of an age to exercise a choice" as to "where" he would go.

According to these authorities, then, even if Cabiness had been still guardian, and had caused the infant and the person with whom the infant stayed, to be brought before a Court on *habeas corpus,* the only result would have been an option presented by the Court to the infant, to go with his guardian or not, just as he, the infant, might please. The Court would not have compelled the infant to *reside* with the guardian.

Nor is there any other mode, as far as I know, by which a guardian, in such a case, might better get the custody of his ward, than he could by this of *habeas corpus.* To obtain such custody in a case of the kind of this, who would the guardian have to sue? The infant? What would be the form of the suit? what the form of the judgment? what the form of the execution? Suppose this infant's contemplated marriage had been consummated, could the guardian, by any process known to law, have separated the infant from his wife and compelled him to reside with him, his guardian?

The guardian, then, not having the power to compel his ward to reside with him, if the ward has arrived at years of discretion, it follows that the residence of the guardian of such a ward is not the residence of the ward, if the ward choose not to make it his residence.

In this case, the ward having been a person twenty years old, chose not to make the residence of his guardian his residence. He elected to reside with others, and others of a different county from that of his guardian, viz: the County of Jasper.

His residence, therefore, was in Jasper and not in Monroe, where his guardian, or late guardian, resided.

This seems to be the conclusion to be drawn from the Common Law; and our Statute but confirms it:

"The place where the family of any person shall permanently reside, in this State, and the place where any person having no family shall generally lodge, shall be held and considered as the most notorious place of abode of such person or persons, respectively." (*Cobb's Dig.* 530.)

The charge of the Court below was therefore, as we think, erroneous.